| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael V. Jehdian<br>400 N. Brand Blvd., Suite 970<br>Glendale, CA 91203<br>818-247-9111 Fax: 818-247-9222<br>195099<br><br>☒ *Attorney for Debtor(s)*<br>☐ *Debtor(s) appearing without an attorney* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    Eulalio Cruz<br>    Olga Leticia Cruz<br><br><br><br><br>                        Debtor(s). | CASE NO.: **1:10-bk-26023-VK** |
|---|---|
| | CHAPTER: **13** |
| | **DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE[11 U.S.C. § 506(d)]** |
| | DATE: **9/13/11**<br>TIME:  **2:30 p.m.**<br>COURTROOM: **301**<br>FLOOR: |

1. TO: <u>GMAC MORTGAGE AND ALL INTERESTED PARTIES; ELIZABETH ROJAS CHAPTER 13 TRUSTEE</u>

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief set forth in the Motion and accompanying supporting documents served and filed herewith.

3. Hearing Location:

| | | |
|---|---|---|
| ☐ | 255 East Temple Street, Los Angeles | ☐ 411 West Fourth Street, Santa Ana |
| ☒ | 21041 Burbank Boulevard, Woodland Hills | ☐ 1415 State Street, Santa Barbara |
| ☐ | 3420 Twelfth Street, Riverside | |

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: <u>August 5, 2011</u>

<u>Law Office of Michael V. Jehdian</u>
Printed name of law firm *(if applicable)*

<u>Michael V. Jehdian</u>
Printed Name of Individual Debtor or Attorney for Debtor

<u>/s/ Michael V. Jehdian</u>
Signature of Individual Debtor or Attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**

**(DEBTOR: Eulalio Cruz and Olga Leticia Cruz**

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"): GMAC Mortgage**

**1. Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

Street Address: **13642 Gault Street**
Unit Number: _____
City, State, Zip Code: **Van Nuys, California 91405**

Legal description of Property for document recording number *(including county of recording)*:

☒ See attached page for legal description of Property or document recording number.

**2. Case History:**

    **a.** A voluntary petition under Chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on *(specify petition date):* **12/22/2010**

    **b.** ☐ An Order of Conversion to chapter 13 was entered on *(specify date):* _____

**3. Grounds for Avoidance of Junior Lien:**

    **a.** As of *(date of title review)* **12/22/2010**, the Property is subject to the following liens in the amounts specified securing the debt against the Property, that the debtor seeks to have treated as indicated:

        (1) *(Name of holder of 1st lien)* **Aurora Loan Services** in the amount of $ **509,270.00** .

        (2) *(Name of holder of 2nd lien)* **GMAC MORTGAGE** in the amount of $ **350,000.00**

        ☒ is ☐ is not to be avoided;

        (3) *(Name of holder of 3rd lien)* _____ in the amount of $ _____ . ☐ is ☐ is not to be avoided;

        ☐ See attached page for additional lien(s).

        As of *(date of valuation/appraisal)* _____, Property is worth no more than *(value per valuation/appraisal)* $ _____ .

    **b.** As a result, Respondent's Lien encumbering the Property is wholly unsecured.

    **c. Evidence in Support of Motion:**

        (1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on *(type of evidence)* **Account Statement from Aurora Loan** , attached hereto and identified as Exhibit **1** .

        (2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on *(type of evidence)* **GMAC Mortgage Account Statement** , attached hereto and identified as Exhibit **2** .

        (3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on *(type of evidence)* _____, attached hereto and identified as Exhibit ___ .

        (4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit **3** .

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2011*          Page 2          **F 4003-2.4.MOTION**

(5) ☒ The value of the Property from paragraph 3(b) is based on *(type of evidence)*
__Uniform Residential Appraisal Report__ , attached as Exhibit _4_ .

(6) ☒ Debtor submits the attached Declaration(s).

(7) ☐ Other evidence *(specify/identify supplemental evidence)*: _____ attached as Exhibit ___.

**d. WHEREFORE, Debtor prays that this Court issue an Order granting the this Motion and establishing that:**

(1) The Property is valued at no more than *(requested value)* $ __350,000.00__ .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured claim(s) in the amount per the filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: The Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior lien(s).

**e.** ☐ See attached continuation page for additional provisions.

Date: __August 5, 2011__

Respectfully submitted,

By: __/s/ Michael V. Jehdian__
Signature of Debtor or Attorney for Debtor

Name: __Michael V. Jehdian__
Printed Name of Debtor or Attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2011*                                    Page 3                                    **F 4003-2.4.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**400 N. Brand Blvd., Suite 970**
**Glendale, CA 91203**

A true and correct copy of the foregoing document described as __Debtor's Motion to Avoid Junior Lien on Principal Residence__
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and
Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are
on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On __8/13/11__, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid,
and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity
served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal
delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the
judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date __August 5, 2011__  8/13/11        Signature: __/s/ Michael V. Jehdian__

Printed Name: __Michael V. Jehdian__

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## II. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):

*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| Lienholder (name and address) | Address from: | Delivery Method |
|---|---|---|
| 1st lienholder *(name and address)*<br>**Aurora Bank FSB**<br>**Jacqueline A. Frommer, President**<br>**1000 N. West Street, Suite 200**<br>**Wilmington, Delaware 19801** | ☐ Proof of Claim ☐ Secretary of State<br>☒ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☒ Certified Mail -<br>Tracking# 70101870000081214765<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**Aurora Loan Services, LLC**<br>**Corporation Service Company**<br>**10350 Park Meadows Dr.**<br>**Littleton, CO 80124** | ☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☒ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>**Aurora Loan Services, LLC**<br>**Pite Duncan, LLP**<br>**San Diego, CA 92177-0933**<br>**4375 Jutland Drive, Suite 200; P.O. Box 17933**<br>**San Diego, CA 92177-0933** | ☒ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☒ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name and address)*<br>**GMAC Mortgage**<br>**Dave Stadler, Senior Vice President**<br>**1100 Virginia Drive**<br>**Fort Washington, PA 19034** | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: *specify*<br>www.gmacmortgage.com | ☐ US Mail<br>☒ Certified Mail - 70101870000081214789<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**GMAC Mortgage**<br>**Corporation Service Company**<br>**2730 Gateway Oaks Dr., Ste 100**<br>**Sacramento, CA 95833** | ☐ Proof of Claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☒ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)*<br>**GMAC Mortgage Loan Servicing Center**<br>**3451 Hammond Avenue**<br>**Waterloo, IA 50702** | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: *specify*<br>www.gmacmortgage.com | ☒ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 3rd lienholder *(name and address)* | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name: |
| 3rd lienholder *(name)* and Agent for Service of Process *(name and address)* | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | ☐ US Mail<br>☐ Certified Mail - |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| | | Tracking#_____ <br> ☐ Overnight Mail - <br> Tracking#_____ <br> Carrier Name: |
|---|---|---|
| 3rd lienholder *(name)* and Servicing Agent *(name and address)* | Address from: <br> ☐ Proof of Claim ☐ Secretary of State <br> ☐ FDIC website ☐ Other: *specify* | Delivery Method <br> ☐ US Mail <br> ☐ Certified Mail - <br> Tracking#_____ <br> ☐ Overnight Mail - <br> Tracking#_____ <br> Carrier Name: |

| | | |
|---|---|---|
| Alternative/Additional Address *(name and address)* | Address from: <br> ☐ Proof of Claim ☐ Secretary of State <br> ☐ FDIC website ☐ Other: *specify* | Delivery Method <br> ☐ US Mail <br> ☐ Certified Mail - <br> Tracking#_____ <br> ☐ Overnight Mail - <br> Tracking#_____ <br> Carrier Name: |
| Alternative/Additional Address *(name and address)* | Address from: <br> ☐ Proof of Claim ☐ Secretary of State <br> ☐ FDIC website ☐ Other: *specify* | Delivery Method <br> ☐ US Mail <br> ☐ Certified Mail - <br> Tracking#_____ <br> ☐ Overnight Mail - <br> Tracking#_____ <br> Carrier Name: |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2011                                    Page 6                          **F 4003-2.4.MOTION**

1     ## DECLARATION OF RICHARD J. ALONZO IN SUPPORT OF
2     ## MOTION TO EXTINGUISH SECOND DEED OF TRUST (LIEN) OF GMAC
3     ## MORTGAGE

4

5     I, Richard J. Alonzo, a licensed Appraiser, do hereby declare that all of the following is

6     true and correct to the best of my personal knowledge and if called upon as a witness I could

7     and would competently testify to the truthfulness of all of the below statements

8     1.     I am making this declaration in support of the Motion to Extinguish Lien of

9     GMAC Mortgage.

10    2.     On or about December 09, 2010, I appraised real property located at 13642

11    Gault Street, Van Nuys, CA 91405-3408 (hereinafter the "Subject Property").

12    3.     Based upon my observations, inspection of the Subject Property, and market

13    research as well a my training, education and experience as a residential appraiser, it is

14    my professional opinion that the Subject Property has a fair market value of

15    $350,000.00 as of December 09, 2010.

16    4.     I have no present or contemplated future interest in the Subject Property

17    described in the appraisal report attached hereto as Exhibit "A". Neither my

18    employment nor my compensation for this appraisal is contingent upon value found.

19

20    I declare under penalty of perjury under the laws of the United States of America that

21    the foregoing is true and complete to the best of my knowledge. Executed this 9 day of

22    December 2010 at Pico Rivera, California.

23

24

25    Richard J. Alonzo

26

27

28

**1**

DECLARATION OF RICHARD A. ALONZO

## DECLARATION OF EULALIO CRUZ

I, EULALIO CRUZ, declare and state as follows:

1.     I am the Debtor along with my spouse Olga Leticia Cruz in Chapter 13 case No. 1:10-bk-26023-VK, I have personal knowledge of the facts stated herein, and if called upon to testify, could and would testify competently thereto.

2.     We filed the instant Chapter 13 bankruptcy case on December 22, 2010.

3.     We purchased our home on or about April 10, 2001. Homecoming Mortgage was the holder of the first deed of trust against our home at the time. Sometime in 2006 or 2007, Aurora Loan Services took over as the holder of the first deed of trust against our home.

4. At the time we filed our bankruptcy case, December 22, 2010, the amount owed on this mortgage was $509,270.00. A true and correct copy of Account Statement from Aurora Loan Services is attached as "Exhibit 1".

5.     On or about August 14, 2008, we took out a line of credit against our home. GMAC Mortgage is the holder of the said mortgage. The amount owed on this was $152,833.74. The second lien held by GMAC Mortgage, against our home is listed on Schedule D of our bankruptcy petition, which is attached as "Exhibit 2" along with a true and correct copy of Account Statement from GMAC Mortgage is attached as "Exhibit 3".

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

Executed this 9th day of January, 2011, at Glendale, California.

Eulalio Cruz, Declarant

EXHIBIT" *1* "

 **Aurora ▪ Loan Services**
10350 Park Meadows Drive
Littleton, CO 80124
www.myAuroraLoan.com

54552-0003774-001-1-010-010-000-000

364 0021940069534BIL011811
EULALIO CRUZ
13642 GAULT ST
VAN NUYS CA 91405-3408

### ACCOUNT STATEMENT

| | |
|---|---|
| Statement Date: | 01/18/11 |
| Account Number: | 0021940069 |
| Property Address: | 13642 GAULT ST<br>VAN NUYS CA 91405 |

| | |
|---|---|
| Customer Service: | 1-800-550-0508 |
| TDD: | 1-877-266-7210 |
| Loan Counseling: | 1-800-550-0509 |
| TDD: | 1-877-266-7211 |
| Insurance Center: | 1-800-732-6578 |

**\* See reverse side for hours of operation
and other important contact information**

### ACCOUNT INFORMATION

Balances as of 01/18/11
| | |
|---|---|
| Principal Balance* | $509,270.73 |
| Escrow Balance | ($5,032.88) |
| Suspense Balance | $105.33 |
| Interest Rate | 8.125% |

Year-to-Date
| | |
|---|---|
| Principal Paid | $0.00 |
| Interest Paid | $0.00 |
| Taxes Paid | $0.00 |

\* The principal balance is not the total amount required to pay your loan in full.

### PAYMENT SUMMARY

| | |
|---|---|
| Principal and/or Interest | $1,840.28 |
| Escrow | $861.48 |
| Optional Products | $0.00 |
| Misc Fees | $0.00 |
| HUD/Buydown Subsidy | $0.00 |
| **Total Monthly Payment** | **$2,701.76** |

### AMOUNT DUE

| | |
|---|---|
| Payment Due Date | 04/01/10 |
| Payment Amount Due | $2,701.76 |
| Past Due Amounts | $27,017.60 |
| Unpaid Late Charges | $276.03 |
| Unpaid Return Check Fees | $0.00 |
| Cumulative Other Fees | $0.00 |
| Cumulative Advances | $7,446.08 |
| **TOTAL AMOUNT DUE** | **$37,441.47** |
| If Paid After 02/16/11 | |
| Late Charge Amount | $92.01 |
| Total Amount Due | $37,533.48 |

### TRANSACTION ACTIVITY SINCE LAST STATEMENT



| Transaction Description | Date Due | Transaction Date | Total Received | Principal | Interest | Escrow | Optional Products | Suspense / Advances / Fees |
|---|---|---|---|---|---|---|---|---|
| Property Preservation Fees | | 11/05/10 | | | | | | -12.00 |
| Hazard Ins Disb | | 11/10/10 | | | | -645.57 | | |
| Escrow Advance | | 11/10/10 | 645.57 | | | 645.57 | | |
| County Tax | | 11/18/10 | | | | -2,351.07 | | |
| Escrow Advance | | 11/18/10 | 2,351.07 | | | 2,351.07 | | |
| Property Preservation Fees | | 12/02/10 | | | | | | -12.00 |
| Property Preservation Fees | | 01/04/11 | | | | | | -15.00 |

**EXHIBIT"** **2** **"**

# GMAC Mortgage Account Statement

## GMAC Mortgage

### CUSTOMER INFORMATION

Name: Eulalio Cruz    13642 GAULT STREET
VAN NUYS    CA 91405

Account Number: 8474071058
Home Phone #: (818)780-1052

Visit us at www.gmacmortgage.com for account information or to apply on-line.

EULALIO CRUZ
13642 GAULT STREET
VAN NUYS CA 91405-3408



For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | 8474971058 |
| Current Statement Date | March 15, 2010 |
| Maturity Date | September 01, 2032 |
| Interest Rate | 5.00000 |
| Current Principal Balance* | $152,833.74 |
| Current Escrow Balance | $0.00 |
| Interest Paid Year-to-Date | $0.00 |
| Taxes Paid Year-to-Date | $0.00 |

For Customer Care inquiries call: 1-800-766-4622
For Insurance inquiries call: 1-800-256-9962
For Payment Arrangements call: 1-800-850-4622

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $938.38 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $2,815.14 |
| Outstanding Late Charges | $15.00 |
| Other | $0.00 |
| Total Amount Due | $3,768.52 |
| Account Due Date | January 01, 2010 |

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

If you are considering a new home purchase or refinancing your existing mortgage, we are here to help. Simply call the number above or visit our website for fast, convenient service.

Introducing Ally Interest Checking: free checks, no monthly fees, and no ATM fees nationwide. Call 877-247-ALLY (2559) anytime or visit us at www.ally.com to learn more.

See Reverse Side For Important Information

Mail This Portion With Your Payment

EXHIBIT" **3** "

1 st



**20071957332** Pages: / 002



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/21/07 AT 08:00AM

Fee: 11.00
Tax: 0.00
Other: 0.00
Total: 11.00

Title Company

# TITLE(S) :   DEED



L E A D     S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**





**RECORDING REQUESTED BY:**
Old Republic Title

**AND WHEN RECORDED MAIL TO:**

Mr. Eulalio Cruz
13642 Gault Street
Van Nuys, CA 91405

06/21/07

**20071957332**

THIS SPACE FOR RECORDER'S USE ONLY

Title Order No.: 2907028301

Escrow No.: 08-00537-017

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $NONE**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale
[ ] Unincorporated area  [X] City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Olga Cruz, spouse of the grantee

hereby GRANT(s) to.

**Eulalio Cruz, a Married Man, as his sole and separate property**

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as
The Easterly 58 feet of the Westerly 208 feet of the Northerly 200 feet of Lot 72 of Tract No. 1081, in the City of
Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 17, Page 130 of Maps, in
the Office of the County Recorder of said County.
Also Known as. 13642 Gault Street, Van Nuys, CA 91405
AP#: 2328-033-037

This conveyance establishes sole and separate property of a spouse, R & T 11911  It is the express intent of the
Grantor, being the spouse of the Grantee to convey all right, title, and interest of the Grantor, community or
otherwise, in and to the herein described property to the Grantee as his/her sole and separate property."

DATED August 14, 2007
STATE OF CALIFORNIA
COUNTY OF Orange
On 8/14/07
Before me, Kerri Lynn Melendez
A Notary Public in and for said State, personally appeared
Olga Cruz

Olga Cruz

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument
WITNESS my hand and official seal

KERRI LYNN MELENDEZ
COMM. #1723894
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Feb 4, 2011

Signature _____  (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW, IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

2nd





**20071957334**  Pages: 008

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/21/07 AT 08:00AM

Fee:  40.00
Tax:  0.00
Other: 0.00

Total: 40.00

Title Company

# TITLE(S) :



L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

This document was prepared by Homecomings Financial
4350 Von Karman Avenue, Suite 100 Newport Beach, CA 9266

Please return this document after recording to:
Homecomings Financial
One Meridian Crossing, Ste 100
Minneapolis MN 55423

08/21/07



**20071957334**

———— State of California ———— Space Above This Line For Recording Data ————

# DEED OF TRUST
(With Future Advance Clause) **MIN:** 100062604749710580

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ..AUGUST 14TH, 2007.....................
The parties and their addresses are:
TRUSTOR: EULALIO CRUZ A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
TRUSTEE: OLD REPUBLIC TITLE COMPANY
18581 TELLER AVE #150
IRVINE, CA 92612

LENDER: HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2. **CONVEYANCE.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
Legal description attached hereto and made a part hereof

Exhibit "A"

The property is located in ..LOS ANGELES................................................. at   13642 GAULT STREET..........
(County)
............................................................., .....VAN NUYS........................................., California 91405...............
(Address)                                     (City)                                               (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Trustor understands and agrees that MERS holds only legal title to the interests granted by Trustor in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ..........155,250.00................. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                                     (page 1 of 6)

Experts © 1994 Bankers Systems, Inc., St Cloud, MN Form RFC-REDT-CA 1/26/2006     MFCA7086 (07/2006) / 047-497105-6          *E C.*

THIS PAGE IS NOT TO BE DUPL

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)* Borrower(s) Promissory Note to Lender dated    AUGUST 14TH, 2007    in the principal sum of U.S. $    155,250.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on    SEPTEMBER 1ST, 2032.

   B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount  Any such commitment must be agreed to in a separate writing.

   C. All obligations Trustor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Trustor and Lender.

   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:

   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Trustor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Express © 1994 Bankers Systems, Inc . St  Cloud, MN  Form RFC-REDT-CA 1/28/2006    MFCA7086 (07/2006) / 047-497105-6

*E C.*

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Trustor will promptly provide Lender with true and correct copies of all existing and future Leases. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default under the terms of this Security Instrument.

Trustor agrees that this assignment is immediately effective between the parties to this Security Instrument. Trustor agrees that this assignment is effective as to third parties when Lender or Trustee takes affirmative action prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Trustor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Trustor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Trustor will endorse and deliver to Lender any payment of Rents in Trustor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Trustor warrants that no default exists under the Leases or any applicable landlord/tenant law. Trustor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Trustor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Trustor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

*E C*

(page 3 of 6)

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Exßered © 1994 Bankers Systems, Inc., St Cloud, MN Form RFC-REDT-CA 1/26/2006     MFCA7096 (07/2008) / 047-497105-8

E C

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Trustor, Trustor agrees to waive any rights that may prevent Lender from bringing any action or claim against Trustor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Trustor shall be deemed to have requested a copy of any notice of default and of any notice of sale hereunder.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SEPARATE PROPERTY.** Any Trustor who is a married person or a registered domestic partner expressly agrees that recourse may be had against his or her separate property.

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ....................... ..................... ... .

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

..................................................... 5-14-07 ................................... .............................................
(Signature) EULALIO CRUZ          (Date)          (Signature)                    (Date)

**ACKNOWLEDGMENT:**
(Individual) STATE OF .California............. COUNTY OF . Orange..................... ss.
On this ..5.14.07......... day of ..August....................... before me Kerri Lynn Melende
a notary public, personally appeared ......Eualalio Cruz...............................................

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Kerri Lynn Melendez

Name (typed or printed)

[Seal: KERRI LYNN MELENDEZ
COMM. #1723894
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Feb 4, 2011]

My commission expires: 2/4/11

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ......... ...................................... County, State of California, in book .........................., page ........ ..... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ....................... ........ ............. ................... ............................. ..................................... ..

Assessor's Identification Number  APN 1: 2328-033-037
...... ........................... -.... ............
APN 2:

07 1957334

# SCHEDULE A (CONTINUED)

# EXHIBIT A

All that certain real property situated in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

The Easterly 58 feet of the Westerly 208 feet of the Northerly 200 feet of Lot 72 of Tract No. 1081, In the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 17 Page(s) 130 of Maps, In the Office of the County Recorder of Said County.

APN #2328-033-037

EXHIBIT" **4** "

# Uniform Residential Appraisal Report
File # 10-124

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 13642 Gault St | City Van Nuys     State CA     Zip Code 91405-3408 |
| Borrower N/A | Owner of Public Record Cruz, Eulalio     County Los Angeles |
| Legal Description Tract No 1081 E 58 Ft Of W 208 Ft Of N 200 Ft Of Lot 72 | |
| Assessor's Parcel # 2328-033-037 | Tax Year 2009     R.E. Taxes $ 4,523 |
| Neighborhood Name Van Nuys era | Map Reference 532-C5     Census Tract 1235.10 |

**SUBJECT**

Occupant ⊠ Owner ☐ Tenant ☐ Vacant     Special Assessments $ none noted     ☐ PUD     HOA $ n/a     ☐ per year ☐ per month
Property Rights Appraised ⊠ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ⊠ Other (describe) Estimate of Market Value
Lender/Client Law Offices of Michael V. Jehdian     Address 401 North Brand Boulevard, Glendale, CA 91203
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?     ☐ Yes ⊠ No
Report data source(s) used, offering price(s), and date(s). As per the MLS, the subject property has not been listed for sale in the past 12 months.

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ n/a     Date of Contract n/a     Is the property seller the owner of public record? ⊠ Yes ☐ No Data Source(s) NDC
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?     ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ⊠ Suburban ☐ Rural | | Property Values ☐ Increasing ⊠ Stable ☐ Declining | | PRICE $(000) | AGE (yrs) | One-Unit | 85 % |
| Built-Up ⊠ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ⊠ In Balance ☐ Over Supply | | Low 195 | 1 | 2-4 Unit | 5 % |
| Growth ☐ Rapid ⊠ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ⊠ 3-6 mths ☐ Over 6 mths | | High 502 | 93 | Multi-Family | 5 % |
| | | | | Pred. 335 | 57 | Commercial | 5 % |
| | | | | | | Other | % |

Neighborhood Boundaries Neighborhood boundaries are Railroad Tracks to the north, Van Nuys Blvd to the west, Victory Blvd to the south and Coldwater Canyon to the east.
Neighborhood Description Subject neighborhood is primarily composed of well-maintained single family residences. All ancillary and commercial support services are close by. Employment centers are accessed by the 170 freeway and employment stability is good. The typical single family residence falls in the 1,000 - 2,500 sq ft range and is situated on a 5,000 - 10,000 square foot lot.
Market Conditions (including support for the above conclusions) see attached marketing conditions form

**SITE**

Dimensions (see plat map attached)     Area 11,600 SqFt     Shape rectangular     View none
Specific Zoning Classification LAR1     Zoning Description single family residential
Zoning Compliance ⊠ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ⊠ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ⊠ | | Water | ⊠ | | Street asphalt | ⊠ | |
| Gas | ⊠ | | Sanitary Sewer | ⊠ | | Alley none/typical | | |

FEMA Special Flood Hazard Area ☐ Yes ⊠ No     FEMA Flood Zone X     FEMA Map # 060137/06037C/1310 F     FEMA Map Date 9/26/08
Are the utilities and off-site improvements typical for the market area?     ⊠ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?     ⊠ Yes ☐ No If Yes, describe
Subject property sides a apartment complex

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ⊠ One ☐ One with Accessory Unit | | Concrete Slab ⊠ Crawl Space | | Foundation Walls | concrete/good | Floors | wood/tile/good |
| # of Stories 1 | | Full Basement ☐ Partial Basement | | Exterior Walls | stucco/good | Walls | drywall/good |
| Type ⊠ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area | n/a sq.ft. | | Roof Surface | comp/good | Trim/Finish | wd/paint/trim/gd |
| ⊠ Existing ☐ Proposed ☐ Under Const. | Basement Finish | None % | | Gutters & Downspouts | metal/good | Bath Floor | tile/good |
| Design (Style) Conventional | | Outside Entry/Exit ☐ Sump Pump | | Window Type | aluminum/good | Bath Wainscot | tile/good |
| Year Built 1955 | Evidence of ☐ Infestation | | | Storm Sash/Insulated | n/a | Car Storage ☐ None | |
| Effective Age (Yrs) 20 | ☐ Dampness ☐ Settlement | | | Screens | yes/good | ⊠ Driveway # of Cars 2 | |
| Attic ☐ None | Heating ⊠ FWA ☐ HWBB ☐ Radiant | | Amenities | | Woodstove(s) # | Driveway Surface concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other | Fuel gas | | ⊠ Fireplace(s) # 1 | ⊠ Fence block | ⊠ Garage # of Cars 2 |
| ☐ Floor ⊠ Scuttle | Cooling ☐ Central Air Conditioning | | | ⊠ Patio/Deck cvrd | ☐ Porch cvrd | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ⊠ Other c-fans | | | ☐ Pool none | ☐ Other | ⊠ Att. ☐ Det. ☐ Built-in |

Appliances ☐ Refrigerator ⊠ Range/Oven ⊠ Dishwasher ⊠ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:     6 Rooms     3 Bedrooms     2 Bath(s)     1,655 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). The subject has swimming pool, brick fireplace, central heating,, ceramic tile counters, wood cabinetry, service porch, ceiling fans, covered patio, concrete driveway, 2 car garage.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The subject property has an additional unit that has been added to the rear of the house apparently without permits. This additional square footage was not included as living area and therefore was given no value in sales comparison analysis. (see attached sketch) Improvements are in good condition. Remaining economic life estimated at 60+ years.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?     ☐ Yes ⊠ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?     ⊠ Yes ☐ No If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 10-124

| There are | 21 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 234,900 | to $ 486,000 | |
|---|---|---|---|---|
| There are | 59 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 195,000 | to $ 502,000 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 13642 Gault St | 7343 Tyrone Ave | | 13810 Enadia Way | | 13816 Enadia Way | |
| | Van Nuys | Van Nuys | | Van Nuys | | Van Nuys | |
| Proximity to Subject | | 0.88 miles NW | | 0.20 miles NW | | 0.21 miles NW | |
| Sale Price | $ n/a | $ 341,000 | | $ 330,900 | | $ 365,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 172.92 sq.ft. | | $ 242.65 sq.ft. | | $ 236.71 sq.ft. | |
| Data Source(s) | | Realist/MLS | | Realist/MLS | | Realist/MLS | |
| Verification Source(s) | | APN2217-001-161 | | APN2216-030-002 | | APN2216-030-003 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | Doc# Pending | | Doc#1764700 | | Doc#1563330 | |
| Date of Sale/Time | | 12/07/2010 | | 12/01/2010 | | 11/01/2010 | |
| Location | Sides Apart. | Residential | -10,000 | Residential | -10,000 | Residential | -10,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 11,600 SqFt | 12,458 SqFt | | 5,850 SqFt | +11,500 | 5,850 SqFt | +11,500 |
| View | None | No View | | None | | None | |
| Design (Style) | Conventional | Traditional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 55 | 62 | | 56 | | 55 | |
| Condition | Good | Inferior | +20,000 | Good | | Good/Upgraded | -20,000 |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |
| Room Count | 6 | 3 | 2 | 8 | 3 | 3 | -5,000 | 6 | 3 | 2 | | 6 | 3 | 2 | |
| Gross Living Area | 1,655 sq.ft. | 1,972 sq.ft. | -15,850 | 1,360 sq.ft. | +14,750 | 1,542 sq.ft. | +5,650 |
| Basement & Finished | n/a | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | Similar | | Similar | | Similar | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Garage | | 2 Car Garage | | 1 Garage | |
| Porch/Patio/Deck | Porch | Covered | | similar | | similar | |
| Fireplace(s) | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Built-In Pool/Spa | Pool | None | | Pool | | Pool | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 4,150 | ☒ + ☐ - | $ 16,250 | ☐ + ☒ - | $ -12,850 |
| Adjusted Sale Price | | Net Adj. 1.2 % | | Net Adj. 4.9 % | | Net Adj. 3.5 % | |
| of Comparables | | Gross Adj. 19.3 % | $ 345,150 | Gross Adj. 11.0 % | $ 346,250 | Gross Adj. 12.9 % | $ 352,150 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)    NDC

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)    NDC

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/11/2002 | 04/18/2003 | 12/19/2002 | 06/07/2004 |
| Price of Prior Sale/Transfer | $273,000/Grant Deed | $300,000/Grant Deed | $285,000/Individual Grant De | $494,000/Grant Deed |
| Data Source(s) | Realist | Realist | Realist | Realist |
| Effective Date of Data Source(s) | 12/07/2010 | 12/07/2010 | 12/07/2010 | 12/07/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Subject property has not transferred title in last 3 years.

comp 1 - List Price $310,000/331 DOM

comp 2 - List Price $339,000/149 DOM

comp 3 - List Price  $360,000/25 DOM

comp 4 - List Price $290,000/2 DOM

comp 5 - List Price $284,600/9 DOM

Summary of Sales Comparison Approach    Sales Comparison analysis best reflects the actions of the typical buyer and seller reacting to the marketplace.

This approach is considered to be the most reliable and is the approach given the most weight in this report.

See attached addendum.

Indicated Value by Sales Comparison Approach $ 350,000

Indicated Value by: Sales Comparison Approach $ 350,000    Cost Approach (if developed) $ 200,092    Income Approach (if developed) $ n/a

Market data approach is most reliable as it best reflects buyer actions. The cost approach supports the market data analysis. Income approach is

Inapplicable as area is predominantly owner occupied. Estimated value is predicated on exposure/marketing time of 90-180 days.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 350,000 , as of 12/9/10 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report
File # 10-124

SEE ATTACHED GENERAL ADDENDUM FOR ADDITIONAL COMMENTS

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Cost new is based on the Marshall & Swift
residential cost handbook. Land value was derived via the extraction method. Land to value ratio is typical for subject neighborhood.

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ |
| Source of cost data  Marshall & Swift Cost Books | DWELLING | 1,655 Sq.Ft. @ $ | 125.00 =$ | 206,875 |
| Quality rating from cost service  good     Effective date of cost data /10 | | n/a Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | patio, porch, etc | | =$ | 25,000 |
| The subject's condition is average and typical of the neighborhood. All | Garage/Carport | 410 Sq.Ft. @ $ | 75.00 =$ | 30,750 |
| general maintenance & repairs appear to be facilitated in a timely & | Total Estimate of Cost-New | | =$ | 262,625 |
| workmanlike manner. Deterioration is reflected by actual vs. effective age | Less     Physical     Functional     External | | | |
| and does not appear excessive. No functional or external obsolescence | Depreciation     87,533 | | =$( | 87,533) |
| noted. | Depreciated Cost of Improvements | | =$ | 175,092 |
| | "As-Is" Value of Site Improvements | | =$ | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only) | 40 Years | INDICATED VALUE BY COST APPROACH | =$ | 200,092 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $     n/a     X Gross Rent Multiplier | n/a     = $     n/a | Indicated Value by Income Approach | | | |

Summary of Income Approach (including support for market rent and GRM)     The typical investor does not buy a single family residence as income producing
property, therefore this approach is not valid approach in the determination of subject value.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No     Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project

| | | | |
|---|---|---|---|
| Total number of phases | Total number of units | Total number of units sold | |
| Total number of units rented | Total number of units for sale | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes | ☐ No  If Yes, date of conversion. | | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source | | | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes | ☐ No  If No, describe the status of completion. | | |

Are the common elements leased to or by the Homeowners' Association? ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report  File # 10-124

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report    File # 10-124

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report   File # 10-124

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Richard J. Alonzo | Name |
| Company Name  Alonzo Appraising | Company Name |
| Company Address  9341 Homestead St., Pico Rivera, CA 90660 | Company Address |
| Telephone Number  (562) 706-3080 | Telephone Number |
| Email Address  richardalonzo@hotmail.com | Email Address |
| Date of Signature and Report  December 13, 2010 | Date of Signature |
| Effective Date of Appraisal  12/9/10 | State Certification # |
| State Certification # | or State License # |
| or State License #  AL036377 | State |
| or Other (describe)                    State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  2/10/2011 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
13642 Gault St
Van Nuys, CA 91405-3408
APPRAISED VALUE OF SUBJECT PROPERTY $    350,000
LENDER/CLIENT
Name
Company Name   Law Offices of Michael V. Jehdian
Company Address   401 North Brand Boulevard, Glendale, CA 91203
Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 10-124

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 13642 Gault St | 14007 Wyandotte St | | 13528 Hartland St | | 6947 Canteloupe Ave | |
| | Van Nuys | Van Nuys | | Van Nuys | | Van Nuys | |
| Proximity to Subject | | 0.52 miles NW | | 0.34 miles SE | | 0.28 miles SW | |
| Sale Price | $ n/a | | $ 336,000 | | $ 290,000 | | $ 324,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 205.27 sq.ft. | | $ 172.21 sq.ft. | | $ 216.72 sq.ft. | |
| Data Source(s) | | Realist/MLS $290,000/2 DOM | | Realist/MLS | | Realist/MLS | |
| Verification Source(s) | | APN2216-001-017 | | APN2328-013-033 | | APN2216-019-006 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | Pending Sale | |
| Concessions | | Doc#1540067 | | Doc#1484746 | | N/A | |
| Date of Sale/Time | | 10/27/2010 | | 10/18/2010 | | DOM 40 | |
| Location | Sides Apart. | Residential | -10,000 | Backs Apart. | | Residential | -10,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 11,600 SqFt | 6,150 SqFt | +10,900 | 7,830 SqFt | +7,540 | 6,375 SqFt | +10,450 |
| View | None | None | | None | | None | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 55 | 55 | | 54 | | 56 | |
| Condition | Good | Good | | Inferior | +20,000 | Good | |
| Above Grade | Total \| Bdrms. \| Baths | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | |
| Room Count | 6 \| 3 \| 2 | 6 \| 3 \| 2 | | 5 \| 3 \| 2 | | 6 \| 3 \| 2 | |
| Gross Living Area | 1,655 sq.ft. | 1,632 sq.ft. | 0 | 1,684 sq.ft. | 0 | 1,495 sq.ft. | +8,000 |
| Basement & Finished | n/a | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | Similar | | Similar | | Similar | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Garage | | 2 Garage | |
| Porch/Patio/Deck | Porch | similar | | similar | | similar | |
| Fireplace(s) | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Built-in Pool/Spa | Pool | None | +15,000 | Pool | | Pool | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 15,900 | | ☒ + ☐ - $ 27,540 | | ☒ + ☐ - $ 8,450 | |
| Adjusted Sale Price | | Net Adj. 4.7 % | | Net Adj. 9.5 % | | Net Adj. 2.6 % | |
| of Comparables | | Gross Adj. 10.7 % $ 350,900 | | Gross Adj. 9.5 % $ 317,540 | | Gross Adj. 8.8 % $ 332,450 | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/11/2002 | 03/29/2005 | 09/30/2009 | 03/05/2010 |
| Price of Prior Sale/Transfer | $273,000/Grant Deed | $470,000/Grant Deed | $267,795/Trustee's Deed | $311,533/Trustee's Deed |
| Data Source(s) | Realist | Realist | Realist | Realist |
| Effective Date of Data Source(s) | 12/07/2010 | 12/07/2010 | 12/07/2010 | 12/07/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales     see analysis of prior sales or transfer history, page 2

Analysis/Comments     see attached addendum

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 (AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## General Addendum

File No. 10-124

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 13642 Gault St | | | | | |
| City | Van Nuys | County | Los Angeles | State | CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | | | |

**COMMENTS:**

Adjustments made for lot size, gross living area, pool, room count, etc. reflect difference of utility and or appeal to buyer. Appraiser adjusted $2 per square foot (rounded) and $50 per square foot for lot size and living area differences. In addition, appraiser adjusted $5,000 per bath, and $15,000 for pool amenity. All comps as adjusted are considered to be good indicators of the subject value. Adjustments are based upon paired sales analysis, conversations and information from area Realtors and appraiser's experience and knowledge of the subject's area. There are no other negative effects on subject's value or marketability other than adjustments. Comps were chosen from NDC, Dataquick and the MLS.

The subject has swimming pool, brick fireplace, central heating,, ceramic tile counters, wood cabinetry, recessed lighting, family room, service porch, ceiling fans, covered patio, concrete driveway, 2 car garage.
The subject property has an additional unit that has been added to the rear of the house apparently without permits. This additional square footage was not included as living area and therefore was given no value in sales comparison analysis. (see attached sketch) Improvements are in good condition. Remaining economic life estimated at 60+ years.

Comparable 1's Document # was not available in public records at time of inspection due to recency of close date.

In comparison to other recently closed transactions with living area square footage and room count similar to the subject's, comparable 5 appears to be a low sale for the area. This sales comparable was addressed due to it being in the same neighborhood as the subject, and similar in obsolescence. This comparable was given less weight in final value analysis.

The subject and sales comparables 1 have similar lot sizes and warrant no adjustments. Lot size differences between the subject and comparables 2 - 6. Appraiser adjusted approximately $2.00 per square foot for site variations.

The subject is located adjacent to a apartment building, therefore giving it external obsolescence. Comparable 5 has similar noise adversity and warrant no location adjustments. Location adjustments made for comps 1, 2, 3, 4 & 6 deemed appropriate by appraiser.

Conditions of subject & comparables is based on roof, paint, stucco, landscaping, etc.; and any data from MLS or local real estate agent(s). Per MLS data, comparable 3 has been recently upgraded throughout the interior and exterior of the house. The subject has no similar improvements. Condition adjustment deemed appropriate by appraiser. Comparable 1 however per MLS is in need of repairs, therefore deemed in inferior condition to that of the subject. Condition adjustment deemed appropriate by appraiser.

Comparables 2, 3, 5 & 6 have a built-in pool amenity similar to that of the subject, therefore no adjustments warranted. Comps 1 & 4 do not have pool amenities; appropriate adjustments made by appraiser.

**RECONCILIATION:**

Sales Comparison analysis best reflects the actions of the typical buyer and seller reacting to the marketplace. This approach is considered to be the most reliable and is the approach given the most weight in this report.
The Income Approach reflects the thinking and attitude of the typical investor. The typical investor does not buy a single family residence as income producing property and therefore not meaningful in this report.
The Cost Approach is the least reliable due to insufficient vacant land sales data to establish the sites value and difficulty in accurately estimating accrued depreciation from improvements. For these reasons this approach has been given secondary weight.

**CONCLUSION:**

Comparables 1, 2 & 3 are the most recently closed sales. Comparable 6 is a pending sale; good indicators of value in the area. Comps 2 & 3 are closest in proximity to the subject's location. Comp 1 has the least amount of net adjustments required.

Most weight was given to comparables 1 - 3 as they were most recent sales and resulted in a narrow range in value. Based on the foregoing sales comparison analysis, the appraiser concludes that the value of the subject property to be $350,000.

## Supplemental Addendum

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 13642 Gault St | | | | |
| City | Van Nuys | County | Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | | |

### PURPOSE OF APPRAISAL:

The purpose of this appraisal is to estimate the market value of the subject property as defined in the Fannie Mae 1004B form. Using the Uniform Standard of Professional Appraisal Practice (USPAP). The function of this appraisal is to assist said lender in evaluating the subject property for mortgage lending purposes. This appraisal is prepared for the sole use of the client and/or its assignees named in this report.

### SCOPE OF THE APPRAISAL

The following steps were taken in arriving at the final estimate of value included in the appraisal report of the Subject property:

1. After receiving the assignment, a preliminary search was made to determine market trends and other significant factors pertinent to the Subject property.

2. A physical inspection of the Subject property was performed. Although due diligence was exercised while visiting the subject property, the appraiser is not an expert in such matters as pest control, structural engineering, hazardous waste, soil slippage, septic and cesspool system integrity, electrical, plumbing, roof, foundation systems, etc., and no warranty is given with regard to these elements. As needed inspections by various licensed professionals within these fields might be recommended with the final estimate subject to their findings.

3. A detailed review of market sales data extracted from various sources, including Multiple Listing Services, Dataquick, NDC, brokers, principles, other appraisers, and the appraiser's files, was undertaken by the appraiser Relevant market factors were weighed and their influence on the subject considered in the Direct Sales Comparison Analysis. Reproduction cost data and market rental data were reviewed as needed.

4. The appraisal report was then completed in accordance with standards dictated by The Appraisal Foundation and lenders guidelines. The report included such data and information needed to lead the reader to a similar value conclusion.

### Site:

Subject is located on a conforming lot. The title report was not reviewed by the appraiser.
The appraisal assumes there are no adverse easements, encroachments, or conditions inherent to the property.

### SUBJECT IMPROVEMENTS:

The subject is located in an area with strong market appeal and is situated in a residential area comprised of single family homes. Employment centers are accessed by the freeway and employment stability is good. The subject is in proximity to employment, transportation corridors and support facilities.

### SUBJECT'S DEED HISTORY:

Due to incomplete, and sometimes inaccurate, flood data information available to the appraiser, it is recommended that the required lender Flood Certification is relied upon. It is assumed, for the purpose of valuation, that the subject is not in a flood zone, however, no warrantees are implied.

No adverse easements, encroachments or other conditions were noted. No soil subsidence or other visible problems were evident, including adverse environmental condition. However, it should be noted that the appraiser is not a qualified expert in these fields and can not render a professional opinion on same, no warrantees are implied.

### MARKET DATA COMMENTS:

The market data adjustments are based upon the market, and as such, may differ from actual cost. They are derived from a modified "matched pairs" analysis as well as attributable market difference ascertained by depreciated replacement cost/contributory value, discussions with local Realtors who specialize in the area and your appraiser's experience and knowledge of the subject's specific marketplace, including bench marking. All of the comparables are considered to be competing properties within the same market area and were selected to "range in" the subject's value. An extensive search was made for the best available similar properties to best represent the subject's most probable market value at the time of the appraisal. Special care and consideration was given in selecting comparables with the most similar physical and locational characteristics to the subject. The comparables utilized in this report are considered to be the best available data. No better data was found to exist.

In the subject's particular area there are inaccuracies in the Assessor Records as well as some inaccuracy in the MLS data. The appraiser has taken every effort to extract the most accurate and relevant data from all sources including personal conversations with the agents involved in the transactions. MLS data is sometimes typically considered to be superior, due to the agent's personal inspections.

### APPRAISER'S SIGNATURE:

The digital signatures contained in this report are password protected and are exact reproductions of the appraiser's actual signature.

# Plat Map

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |

## Subject Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



### Subject Front

| | |
|---|---|
| 13642 Gault St | |
| Sales Price | n/a |
| Gross Living Area | 1,655 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Sides Apart. |
| View | None |
| Site | 11,600 SqFt |
| Quality | Average |
| Age | 55 |



### Subject Rear



### Subject Street

## Subject Interior Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



### Subject Interior

13642 Gault St
Sales Price | n/a
Gross Living Area | 1,655
Total Rooms | 6
Total Bedrooms | 3
Total Bathrooms | 2
Location | Sides Apart.
View | None
Site | 11,600 SqFt
Quality | Average
Age | 55



### Subject Interior



### Subject Interior

## Comparable Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



### Comparable 1
7343 Tyrone Ave
| | |
|---|---|
| Prox. to Subject | 0.88 miles NW |
| Sale Price | 341,000 |
| Gross Living Area | 1,972 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Residential |
| View | No View |
| Site | 12,458 SqFt |
| Quality | Average |
| Age | 62 |



### Comparable 2
13810 Enadia Way
| | |
|---|---|
| Prox. to Subject | 0.20 miles NW |
| Sale Price | 330,000 |
| Gross Living Area | 1,360 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 5,850 SqFt |
| Quality | Average |
| Age | 56 |



### Comparable 3
13816 Enadia Way
| | |
|---|---|
| Prox. to Subject | 0.21 miles NW |
| Sale Price | 365,000 |
| Gross Living Area | 1,542 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 5,850 SqFt |
| Quality | Average |
| Age | 55 |

# Comparable Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



**Comparable 4**

| | |
|---|---|
| 14007 Wyandotte St | |
| Prox. to Subject | 0.52 miles NW |
| Sale Price | 335,000 |
| Gross Living Area | 1,632 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 6,150 SqFt |
| Quality | Average |
| Age | 55 |



**Comparable 5**

| | |
|---|---|
| 13528 Hartland St | |
| Prox. to Subject | 0.34 miles SE |
| Sale Price | 290,000 |
| Gross Living Area | 1,684 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Backs Apart. |
| View | None |
| Site | 7,830 SqFt |
| Quality | Average |
| Age | 54 |



**Comparable 6**

| | |
|---|---|
| 6947 Cantaloupe Ave | |
| Prox. to Subject | 0.28 miles SW |
| Sale Price | 324,000 |
| Gross Living Area | 1,495 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Residential |
| View | None |
| Site | 8,375 SqFt |
| Quality | Average |
| Age | 56 |

## Market Conditions Addendum to the Appraisal Report

File No. 10-124

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address 13642 Gault St | City Van Nuys | State CA | ZIP Code 91405-3408 |
|---|---|---|---|

Borrower N/A

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 34 | 13 | 12 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 5.67 | 4.33 | 4 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 35 | 36 | 21 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 6.18 | 8.31 | 5.25 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $335,000 | $355,000 | $332,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 34 | 29 | 20 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | $349,000 | $337,000 | $325,900 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Median Comparable Listings Days on Market | 174 | 147 | 112 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100 | 100 | 101.44 | ☐ Increasing | ☒ Stable | ☐ Increasing |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). Currently there is no evidence of concessions in subject neighborhood. The above specified information is identified as an average.

Are foreclosure sales (REO sales) a factor in the market? ☒ Yes ☐ No If yes, explain (including the trends in listings and sales of foreclosed properties).
The SocalMLS indicates there were 59 closed sales during the past 12 months and 32 of those sales were either foreclosures or short sales which is 54% of the total transactions in this market area. Prior Months 7-12: 34 Sales; 19 foreclosures or short sales ; 56% of sales for this period. 4-6: 13 Sales; 5 foreclosures or short sales; 38% of sales for this period. 0-3: 12 Sales; 8 foreclosures or short sales; 67% of sales for this period.

Cite data sources for above information. The SocalMLS was the data source used to complete the Market Conditions Addendum.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The market research analysis indicates that values have been in a stable state as change in value has been less than 5%. Supporting factors also indicate that days on the market for previous sales and listings have been declining, giving strong support for the estimated 3-6 months marketing time. All conclusions were based on information obtained withing the neighborhood boundaries, therefore giving a more accurate conclusion.

| If the subject is a unit in a condominium or cooperative project , complete the following: | n/a | | Project Name: n/a | | |
|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name Richard J. Alonzo | | Supervisory Appraiser Name | |
| Company Name Alonzo Appraising | | Company Name | |
| Company Address 9341 Homestead St., Pico Rivera, CA 90660 | | Company Address | |
| State License/Certification # AL036377 | State CA | State License/Certification # | State |
| Email Address richardalonzo@hotmail.com | | Email Address | |

Freddie Mac Form 71 March 2009     Page 1 of 1     Fannie Mae Form 1004MC March 2009



## STATE OF CALIFORNIA

Business, Transportation & Housing Agency

### OFFICE OF REAL ESTATE APPRAISERS

# REAL ESTATE APPRAISER LICENSE

OREA APPRAISER IDENTIFICATION NUMBER AL036377

## RICHARD J. ALONZO

has successfully met the requirements for licensing as a real estate appraiser in the State of California and is, therefore, entitled to use the title "Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

OFFICE OF REAL ESTATE APPRAISERS

*Bob Clark*

Date Issued: February 11, 2009
Date Expires: February 10, 2011

Audit No. 116291

THIS DOCUMENT CONTAINS A TRUE WATERMARK – HOLD UP TO LIGHT TO SEE "SAFE" AND "VERIFY FIRST"

Form SCNLLTR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Appraiser License



## COVER NOTE

**INSURED:** Richard J. Alonzo

MAILING ADDRESS: 9341 Homestead Street
Pico Rivera, CA 90660

*This is to certify that the undersigned has procured insurance coverage as hereafter specified from certain companies and/or underwriters.*

**EFFECTIVE: 01/10/2010**    **EXPIRATION: 01/10/2011**    **RETROACTIVE: 01/10/2008**

COVERAGE: Professional Liability for Specified Professions

Profession: Real Estate Appraiser
Claims Made Form: MPL#26901 (9/87)
Limits: Per Occurence: $1,000,000  Annual Aggregate: $1,000,000
Deductible: $1,000

CONDITIONS:

Real Estate Agent/ Broker Referral Indemnity
Knowledge of Wrongful Act Exclusion
Pending and/or Prior Litigation Exclusion
Defense within Policy Limit
Deductible includes Loss Adjustment Expenses

COMPANIES PARTICIPATING:
National Union Fire Insurance Company of Pittsburgh, PA

**ASSIGNED COVER NOTE # Z FREA 08-9430**

CUSTOMER # 0035021

Issued at:  4907 Morena Blvd., Suite 1415
San Diego, CA 92117

**DATE: 01/19/2010**                    By:    *KCarpenter*

Insurance, when effected shall be subject to all terms and conditions of policy (ies) which will be issued, and in event of any inconsistency herewith, the terms and provisions of the policy.

## Location Map

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



## Building Sketch

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 13642 Gault St | | | |
| City | Van Nuys | County Los Angeles | State CA | Zip Code 91405-3408 |
| Lender | Law Offices of Michael V. Jehdian | | | |



Elenced by a la mode, inc.

### Area Calculations Summary

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 1754 Sq ft | 44 × 23 = 1012 |
| | | 18 × 19 = 342 |
| | | 25 × 16 = 400 |
| **Total Living Area (Rounded):** | **1754 Sq ft** | |
| Non-living Area | | |
| Unpermitted Area | 522.5 Sq ft | 22 × 19 = 418 |
| | | 11 × 9.5 = 104.5 |
| 2 Car Attached | 410 Sq ft | 20 × 20.5 = 410 |